IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

           v.                              CASE NO.   16-CR-339 (NAM)
                                                                  16-CR-340

CLIF SEAWAY,

                          Defendant.
_____

# **SENTENCING MEMORANDUM**

DATED:    March 21, 2018                    LISA A. PEEBLES
                                                          Federal Public Defender

                                    By:

                                                  Randi J. Bianco
                                                  Assistant Federal Public Defender
                                                  Bar Roll No. 507514
                                                  Clinton Exchange, 3rd Floor
                                                  4 Clinton Street
                                                  Syracuse, New York    13202
                                                  (315) 701-0080

I. **PRELIMINARY STATEMENT**

A jury trial commenced on December 11 and the trial concluded on December 14, 2017. The jury found Clif Seaway (hereinafter Seaway) guilty of two counts of Conspiracy to Sexually Exploit a Child in violation of 18 U.S.C. § 2251(a) & (e); and ten counts of Sexual Exploitation of a Child in violation of 18 U.S.C. § 2251(a) & (e), and 2(a). Seaway is currently scheduled for sentencing on April 30, 2018

A Presentence Investigation Report (hereinafter "PSR") was prepared by the United States Probation Department on March 14, 2018, in anticipation of his sentencing.  According to the PSR, Seaway's advisory sentencing guideline range of imprisonment is life based upon a total offense level of 43 and a criminal history category of 2.  Seaway's highest offense, 18 U.S.C. § 2251(a), requires a mandatory minimum sentence of 15 years with a maximum term of 30 years.

Seaway has raised his objections to the factual contents contained in the PSR with probation.

II. **MR. SEAWAY'S 18 U.S.C. 3553(a) FACTORS**

　　a. **The Nature and Circumstances of This Offense**

The events underlying the charges took place over a number of years.  When Seaway first began sexually acting out with children, he did not believe he was hurting them. This was because Seaway was sexually abused so many times at a very young age that he thought this was

**The History and Characteristics of the Defendant**

i)　　*Mr. Seaway was the victim of extreme sexual, physical, and emotional abuse for his entire childhood.*

Mr. Seaway was the victim of extreme sexual, physical, and emotional abuse from a

2

number of different perpetrators throughout his entire childhood. Specifically, he was sexually abused by his father from the age of two until he was thirteen; he was sexually abused by a babysitter between the ages of three and four; and he was sexually abused by his brother between the ages of five and six.

Mr. Seaway's father's physical and mental abuse of Mr. Seaway, Mr. Seaway's mother, and Mr. Seaway's siblings escalated when the father was intoxicated. He was frequently intoxicated because he was an alcoholic. Thus, violence was the normal state of affairs in the household.

Mr. Seaway reports that as a result of the sexual abuse, he attempted suicide by slamming his head into a desk in the third grade. He was brought to a counselor, but his father convinced him not to tell anyone about the abuse.

When Mr. Seaway was eight years old, he finally told his mother what his father was doing to him. Seaway only told his mother of the abuse after his young friend was hit by a drunk driver on his street. Mr. Seaway's friend died in his arms on the street. Seaway came home completely distraught with her blood all over his clothes, but got no support from either parent. When he revealed his father's abuse, his mother did absolutely nothing to stop it. In fact, she told Seaway "nah, he wouldn't do that." His mother did nothing to confront his father, and let the sexual abuse continue for five more long years.

Mr. Seaway frequently wet his bed as a child – a well-known indicator that a child was the victim of sexual abuse.

The only reason the sexual abuse stopped was because Mr. Seaway's parents forced him to leave the family home after Seaway tried to prevent his father from, once again, physically beating his mother. This happened when Mr. Seaway was thirteen years old. Mr. Seaway

witnessed his mother getting a particularly brutal beating from his father. He couldn't stand by and watch his mother being struck over and over, so on this occasion he intervened. His father became enraged, his mother slapped him for interfering, and they kicked Mr. Seaway out of the house.

Thereafter, at thirteen years old, Mr. Seaway was left to fend for himself.   He lived in a variety of places over the next few years, landing back with his parents for only brief periods. Each time he returned to his parents' home, the physical and mental abuse continued and he would leave again. He ended up dropping out of school in the ninth grade because he couldn't work to support himself and go to school.

There are instances in which it is appropriate for the Court to grant a downward departure from the sentencing guidelines in cases where the defendant has endured extreme sexual abuse as a child.   *United States v. Rivera*, 192 F.3d 81, 84 (2d Cir. 1999) ("It seems beyond question that abuse suffered during childhood – at some level of severity – can impair a person's mental and emotional conditions…in extraordinary circumstances…district courts may properly grant a downward departure on the ground that extreme childhood abuse caused mental and emotional conditions that contributed to the defendant's commission of the offense").   This is such a case.

### ii)   *Mr. Seaway has significant physical and mental health issues, including untreated alcoholism.*

According to Mr. Seaway's medical records form Pulaski Health Center, he currently suffers from a myriad of physical health problems. Additionally, he also suffered for many years from depression and untreated alcoholism. Before being incarcerated, Mr. Seaway reported to his treating physician that he was an alcoholic and "feeds his drinking problem so it is not a

problem." Pulaski Health Center listed his *active chronic problems* as:

- Allergic Rhinitis
- Carpal Tunnel Syndrome
- Chronic Obstructive Pulmonary Disease
- Colonoscopy (fiberoptic) - 2012 Contracture of Palmar Fascia
- Diabetes Mellitus
- Lesion of Ulnar Nerve
- Migraine Headaches
- Obesity Unspecified
- Peripheral Vascular Disease
- Unspecified Vitamin D Deficiency

Prior to his arrest, Seaway was prescribed the following medications:

- Albuterol Sulfate
- Atorvastalin Calcium 20 MG Triblel ·1 every bedtime, 30 days, 5 refills
- Flovent HFA *220* MCG/ACT Aerosol 2 puffs bid - rinse after, 90 days, 1 refills
- Furosemide 40 MG Tablet once a day, 30 days, 3 refills
- Ibuprofen 800 MG Tablet as needed prn
- Loraladine 10 MG Tablet
- Nicotine 2·1 MG/24HR Patch
- Potassium Chloride ER 10 MEO Tablet
- PredniSONE 20 MG Tablet
- ProAir HFA 108 (90 Base
- Splrlva HandiHaler 18 MCG Capsule,
- Tylenol Extra Strength 500 MG Tablet

These same medical records reveal that Seaway had undergone the following surgical procedures:

- Appendectomy
- Cholecystomy
- *Multiple eye surgeries*
- Tubular adenoma 2012
- Submucosal rectal mass with lipomci

At the time of Seaway's arrest, he was on social security disability because of his *chronic* physical health issues. These issues affected his life on a daily basis and will continue to affect

his life in the future. We ask that this court consider a downward departure based on Seaway's physical condition and his age. U.S.S.G. §5H1.4 provides that "an extraordinary physical impairment may be a reason" to impose a sentence below the guideline range. This departure is available even in sex-with-a-minor cases and child pornography cases.   See U.S.S.G. § 5K2.22

### iii)   Mr. Seaway's Age

Mr. Seaway is 61 years old and, should the Court sentence him to 30 years, he would be close to 90 years old, assuming he lives long enough to be released. Thereafter, he will be on supervised release for the remainder of his life. The Sentencing Commission has found that advanced age should be considered at sentencing and that there is an inverse correlation between recidivism rates and age.   United States Sentencing Commission, *Measuring Recidivism: the Criminal History Computation of Federal Sentencing Guidelines*, (May 2004).   The Sentencing Commission found that less than 10% of defendants over 50 years of age committed another crime.  *Id.* at 28.   Controlling for criminal history category, only 6.2% of the defendants over age 50 that were in a Criminal History Category of I committed another offense.  *Id.* at 28.

While there is some evidence that sex offenders pose a higher risk of recidivism than other criminal defendants, *see, e.g.*, *United States v. Hayes*, 445 F.3d 536, 537 (2d Cir. 2006) (citing H.R.Rep. No. 107-527, at 2 (2002), other studies focusing on sexual offenders found results similar to those found by the Sentencing Commission: recidivism decreases with age for all offender types.  *See, e.g.*, R. Karl Hanson, *Age and Sexual Recidivism: A Comparison of Rapists and Child Molesters* (2001).   Although the Supreme Court has stated that sex offenders have a recidivism rate "as high as 80%," that figure has recently been shown to have been derived from one unscientifically supported article in a 1986 edition of Psychology Today, which the author himself has since repudiated. David Feige, *When Junk Science About Sex Offenders*

*Infects the Supreme Court*, N.Y. Times, Sept. 12, 2017, found at https://www.nytimes.com/2017/09/12/opinion/when-junk-science-about-sex-offenders-infects-the-supreme-court.html; Joshua Vaughn, *Closer Look: Finding Statistics to Fit a Narrative*, The Sentinel, Mar. 25, 2016, found at http://cumberlink.com/news/local/closer_look/closer-look-finding-statistics-to-fit-a-narrative/article_7c4cf648-0999-5efc-ae6a-26f4b7b529c2.html.

Even if the recidivism rates of the entire population of sex offenders are generally higher than the population of other criminal defendants, a point Mr. Seaway does not concede, studies have demonstrated that sex offenders receiving treatment are less likely to recidivate than sex offenders who remain untreated.  *See*, *e.g.*, Karen Kersting, *New Hope for Sex Offender Treatment,* MONITOR ON PSYCHOLOGY (Aug. 2003); John Q. LaFond & Bruce J. Winnick, *Sex Offender Reentry Courts: A Proposal for Managing the Risk of Returning Sex Offenders to the Community*, 34 Seton Hall L. Rev. 1173, 1180-84 (2004).

Here, Seaway is willing to undergo sex offender treatment, something he has never received before. He will also be close to 90 years old to be followed by supervised release. The likelihood that he will reoffend at that time is minimal.

### iv) *Voluntary Cessation of hands-on offending prior to arrest.*

Also of significance is that Seaway stopped sexually abusing children more than two years before his arrest. A review of Seaway's written sworn statement and 10-hour video/audiotaped confession detail his sexual conduct and when he stopped this conduct. The New York State Police did an extensive investigation in this matter and there is no evidence to dispute that Seaway stopped being a hands on offender long before his arrest.

### v) *Psychological Evaluation*

Mr. Seaway was given a forensic psychological evaluation on May 15, 2017, from Dr.

Thomas Lazzaro (see evaluation submitted under separate cover). Dr. Lazzaro performed a number of objective psychological tests on Mr. Seaway and the results are contained in the evaluation submitted to the Court. Dr. Lazzaro also administered the Test of Memory Malingering[1]. and determined that there was no evidence or suspicion of malingering here. As such, the results of the testing instruments administered to him can be considered to be valid. Of significance in the evaluation, Dr. Lazzaro found that Seaway has a full scale IQ of 93 and scored lower than 68% of persons his age who took the same IQ test. His reading recognition was determined to be at the 6th grade level.   Dr. Lazzaro summarized his findings as follows:

> "In summary, based on these psychological testing data, his history, and on clinical impressions,in this psychological examiner's opinion, with a reasonable degree of psychological and professional certainty, Mr. Seaway is a chronically emotionally disturbed man suffering from a Schizotypal Personality Disorder, a disorder that is on the Schizophrenia spectrum, which is superimposed on a Posttraumatic Stress Disorder and an Alcohol Use Disorder. His Schizotypal Personality Disorder symptoms include his odd thinking and beliefs, his unusual perceptual experiences at times, his inappropriate affect at times, his peculiar appearance and behavior that is similar to persons with autism, and his interpersonal difficulties.  He is also a markedly anxious and depressed man with organically-based neuropsychological deficits. It is this examiner's opinion, as well, again with a reasonable degree of psychological and professional certainty, that at the outset of his offenses Mr. Seaway did not fully comprehend the nature and consequences of his behavior or that it was wrong. However, he did soon become aware of the nature and consequences of his conduct and that it was wrong, but continued to offend anyway."

## III.   CONCLUSION

Before Mr. Seaway was ever a defendant in a sex offense case, he was the victim of sexual abuse at the hands of his father, his brother and his babysitter.   This went on from ages 2 to 13. In addition to the sexual abuse, he witnessed domestic violence on a regular basis as his

---

[1] Malingering is the fabricating of symptoms of mental or physical disorders for a variety of reasons.

father physically and verbally abused his mother, himself and his siblings. As a result, Mr. Seaway never knew what was "normal" for many years. Seaway was left to raise himself from age 13 onward. Seaway submits that by combining his disastrous upbringing; his low IQ; and his untreated alcoholism, these factors contributed to the instant offense. Seaway has never had treatment and agrees he needs mental health treatment, sexual offenders' treatment and treatment for his alcoholism.

Thus, his age, physical health, treatment opportunities, and post-release supervision indicate that the likelihood of his recidivism will significantly diminish over time and that a 30-year sentence plus life supervision would be a sentence sufficient, but not greater than necessary, to satisfy the goals of the sentencing reform act.

## IV. REQUEST FOR JUDICIAL RECOMMENDATION

The defense requests the Court to recommend to the Bureau of Prisons that Mr. Seaway be designated to FCC Tucson, as that facility has a sex offender treatment program, which Mr. Seaway would like to participate in.

DATED:  March 21, 2018            LISA A. PEEBLES
                                  Federal Public Defender

                            By:   *S/Randi J. Bianco, Esq.*
                                  Assistant Federal Public Defender
                                  Bar Roll No. 507514
                                  Clinton Exchange, 3rd Floor
                                  4 Clinton Street
                                  Syracuse, New York   13202
                                  (315) 701-0080

TO:   Lisa Fletcher, Esq., AUSA
      Janna Kulakowski, USPO
      Clif Seaway

9