IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

UNITED STATES OF AMERICA

v.

CLIF SEAWAY,

Defendant.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Case No.      5:16-CR-339 (NAM)
              5:16-CR-340 (NAM)

GOVERNMENT'S SENTENCING
MEMORANDUM

The United States of America, by and through its counsel of record, the United States Attorney for the Northern District of New York, hereby files its sentencing memorandum requesting, for the reasons set forth below, that the Court impose a Guidelines sentence.

## INTRODUCTION

On December 14, 2017, following a four-day jury trial, defendant Clif Seaway was convicted of all counts charged against him in Indictments 16-CR-339 and 16-CR-340, which were consolidated for trial.   In all, Seaway was convicted of twelve counts: two counts of conspiring with others to sexually exploit three children, and ten substantive counts of sexually exploiting five children, both alone and in concert with others, all over the course of 13 years, in violation of Title 18, United States Code, Sections 2251(a) and (e).

Seaway is scheduled to be sentenced on April 30, 2018.

## APPLICABLE STATUTORY AND GUIDELINES PROVISIONS

**1.      Statutory Maximum and Minimum Sentences**

The defendant's convictions on each count of conviction subject him to statutory minimum terms of imprisonment of 15 years, and a statutory maximum terms of 30 years of imprisonment, per count.   18 U.S.C. § 2251(e); PSR ¶ 160.   In addition, each count carries with it a mandatory

term of supervised release of at least 5 years, and up to life, 18 U.S.C. § 3583(k), PSR ¶ 165, and

a fine of up to $250,000.   18 U.S.C. § 3571; PSR ¶ 170.[1]

2.      **Guidelines Provisions**

    a.      **Offense Level**

The Government adopts, without qualification, the Guidelines calculation set forth in the

PSR, resulting ultimately in a Total Offense Level of 43.   PSR ¶¶ 38 - 128.

    b.      **Acceptance of Responsibility**

The defendant took his case to trial, and has failed to accept responsibility for any of his

many crimes.   Accordingly, he has not earned any adjustment for acceptance of responsibility.

U.S.S.G. § 3E1.1, PSR ¶ 37.

    c.      **Criminal History Category**

According to the presentence report, the defendant's Criminal History Category is II.   PSR

¶¶ 129 - 133.   The Government agrees with the Probation Office's determination of the

defendant's criminal history category.

    d.      **Guidelines Range and Sentence**

As described above, the defendant's Total Offense Level is 43 and his Criminal History

Category is II.   As a result, the Sentencing Guidelines advise that the defendant receive a sentence

of life.   PSR ¶ 161.   However, as the statutory maximum sentence on each count of conviction is

30 years, the Guidelines range becomes 360 years.   *Id*.   U.S.S.G. § 5G1.2(d) provides that in such

a circumstance, the sentences imposed on each count of conviction shall run consecutively "to the

---

[1]      The Government agrees with the assessment of the Probation Officer that it does not appear
that the defendant has the ability to pay a fine.   PSR ¶¶ 157 - 159.

extent necessary to produce a combined sentence equal to the total punishment."   PSR ¶ 162.   *See*

*United States v. Howells*, 676 Fed. App'x 55, 57 (2d Cir. 2017) (because no count of conviction

carried a potential life sentence, the Guidelines sentence was properly calculated as 580 years –

the total of the statutory maximums for each count of conviction); *see also United States v.*

*Ketcham*, 506 Fed. App'x. 42 (2d Cir. 2013); *United States v. Petrie*, 542 Fed. App'x. 746 (2d Cir.

2013).

The Guidelines term of supervised release is no less than 5 years, and up to Life, and the

recommended term is lifetime supervision.   PSR ¶¶ 167; 18 U.S.C. § 3583(k); U.S.S.G.

§ 5D1.2(b)(2).

## 3.     Forfeiture

As set forth in the Forfeiture Allegation of each Indictment, the defendant shall forfeit to

the United States all of his right, title and interest of any nature in any and all assets that are subject

to forfeiture, pursuant to 18 U.S.C. § 2253.   PSR ¶ 2.

## GOVERNMENT'S SENTENCING RECOMMENDATION[2]

A sentence should be reasonably designed to achieve the total punishment, taking into

account the nature and seriousness of the defendant's crimes, the harm done to the victims, and

---

[2]   The Government reserves the right to respond to defense arguments raised after the filing of this memorandum.   Similarly, if the Court is considering a *sua sponte* departure from the applicable sentencing guidelines range on a ground not previously identified by the parties or in the Presentence Investigation Report, the parties are entitled to notice and an opportunity to respond.   *See* Fed R. Crim. P. 32(i)(1)(c), 32 (h).

Further, the United States respectfully requests that the Court provide the parties with any *ex parte* communications received by the Court in connection with sentencing, with the exception of the confidential sentencing recommendations submitted by the United States Probation Office.

each of the relevant considerations required under 18 U.S.C. § 3553(a).   Here, that sentence is 360 years imprisonment and lifetime supervised release. This sentence, recommended by the Guidelines, takes into account the nature and seriousness of the defendant's crimes, including the length of time and number of victims he sexually abused and exploited, as well as each of the other relevant considerations required under 18 U.S.C. § 3553(a).[3]

Clif Seaway is an unapologetic serial sex offender - a child rapist - whose victims are every child who ever had the misfortune of spending even one night in his presence.   At trial, the Court saw, first hand, a *small* sampling of the insidious abuse he engaged in over the course of thirteen years.   Each child abused was entrusted to his care, and he used each of them for his own sadistic amusement, capturing the abuse in images and videos he then carefully and methodically kept and catalogued – by victim, then by age, and then by act.   Seaway created hundreds of files of his exploitation of V-1 and V-2, and *over 6,000* files of his exploitation of V-3.   PSR ¶ 7.   And, he exploited V-4 and V-5, who simply had the misfortune of being in his presence as a result of befriending another little girl: V-3. PSR ¶¶ 13 – 14, 33 – 34.

The Court was able to see, and sometimes hear, each of the defendant's charged crimes – picture by picture, video by video - through the exhibits presented at trial.   The relentlessness of his use of these children for his own sexual gratification, and the regularity in which he exploited them, demonstrates how dangerous a sex offender he is.   His entire life was built around it.

---

[3] It is noteworthy that the policy statement issued by the Sentencing Commission (U.S.S.G. § 5K2.0(b)) advises against a departure from the Guidelines in child crimes and sexual offenses except in explicitly numerated circumstances, none of which, the Government submits, are present here.

4

The lasting effects Seaway's crimes on his victims was also witnessed though the testimony of V-1, and the mothers of V-4 and V-5.   Each offered compelling evidence that the scars of abuse are lifelong, and devastate not only the children abused, but their entire families as well. This is stunningly reiterated in the victim impact statements attached to the PSR.    As V-1 articulates so well – *she* is already serving a life sentence, one imposed by Clif Seaway:

> I'm twenty one years old and I haven't slept in the dark since I was five years old. … He stole things from me that I will never recover. He took my sense of safety, my security, my trust in adults. He took my innocence.   …   I trusted Clif implicitly.   …   He doesn't care, and he never will.   My childhood meant nothing to him.

PSR, Appendix A, letter of V-1.

Few offenses are more serious, and the recommended life sentence acknowledges that, while at the same time affording adequate deterrence to others. Moreover, Guidelines sentencing is the surest way to ensure against sentencing disparity "among defendants with similar records who have been found guilty of similar conduct."   18 U.S.C. § 3553(a)(6).   If all defendants, like Seaway, who engage in sexually explicit conduct with multiple children *for thirteen years*, and produce images memorializing that exploitation, are sentenced within the range recommended by the Sentencing Commission, there will be no sentencing disparity. *See*, e.g., *United States v. Jason Kopp*, 712 Fed. App'x 117 (2d Cir. 2018) (upholding 235 year sentence); *Howells*, 67 Fed. App'x 55 (upholding 580 year sentence); *see also Ketcham*, 507 Fed. App'x. 42 (upholding 60 year sentence for three counts of producing images of one victim over two year period of time); *United States v. Chase*, 695 Fed. App'x. 601 (2d Cir. 2017) (upholding 50 year sentence for four counts of sexually exploiting one child over period of one year).

**GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTECING ARGUMENTS**

In arguing for a minimal, 30-year sentence, defendant Clif Seaway references medical records and a psychological examination, neither of which have been provided to the Government. We are hereby demanding copies of each, and reserve our right to file any supplemental arguments that may be appropriate after receiving them.    Without benefit of these documents, we offer the following responses to arguments raised in his sentencing memorandum.

 **1. Defendant's Childhood and Background**

Defendant self-reports a history of childhood abuse that is not only unverified, but largely disputed by his sister.   See PSR ¶ 146.   Additionally, the reporting of this abuse is set forth in greater detail in the arguments of counsel in the defendant's sentencing memorandum than even recounted by the defendant to the Probation Officer as listed in the PSR.   Compare PSR ¶ 141 with Defendant's Sentencing Memorandum, pp. 2 – 4.

Even if the defendant's reports of his childhood are accepted as true (which the Government does not concede), because the same is true of so many other defendants who commit the same, and similar, offenses, this is simply not a grounds for departure.   *United States v. Vela*, 927 F.2d 197, 199 (5th Cir. 1991) ("Childhood abuse and neglect are often present in the lives of criminals. They always affect their mental and emotional condition. 'We simply cannot agree, therefore, that these are the kinds of considerations which warrant substantial reductions in guidelines sentences.'") quoting *United States v. Daly*, 883 F.2d 313, 319 (4th Cir. 1989)(internal citation omitted); *see also United States v. Brady,* 417 F.3d 326, 334 (2d Cir. 2005) ("because it is the sad fact that so many defendants have unfortunate pasts," there is a high standard of what constitutes an atypical case that would merit a sentencing departure.)   Seaway has offered nothing

that would set his case apart as "atypical" enough to warrant a sentencing departure in this matter.

Moreover, to merit such a departure, a defendant need show more than extreme and atypical abuse (which Seaway does not show).    There must also be a causal connection between the abuse and the commission of the offense.    *Brady*, 417 F.3d at 334 ("We have recently explained that the requirement of a causal nexus restricts the circumstances in which a departure on the grounds of abuse is permitted only to cases where the abuse brings about a mental condition that leads to or causes the criminal conduct."); *United States v. Reinoso*, 350 F.3d 51, 58 (2d Cir. 2003) (Circuit law "explicitly limits the situations in which a departure based on abuse is warranted to those in which the abuse creates to a mental condition that in turn leads to or causes the criminal conduct."). While Seaway summarizes facts about his upbringing, nowhere are those circumstances connected to his offenses. Accordingly, even were these events real, they must be atypical, which, sadly, they are not, and therefore the information does not rise to a level that would justify departure from the recommended Guidelines range.

Additionally, where a defendant possesses such characteristics – that is, characteristics from childhood abuse that make it more difficult for him to comply with the law:

> the question, unaddressed by the defendant, would remain whether they require a shorter sentence or a longer sentence than would be appropriate for a defendant who lacked those characteristics. *The more difficult it is for a person to resist a desire for sexual contact with children, the more likely he is to recidivate, and this is an argument for a longer prison sentence.* And on grounds of deterrence as well as incapacitation, for the stronger the impulse to commit a criminal act, the greater must be the threat of punishment in order to deter it.

*United States v. Beier*, 490 F.3d 572, 574 (7th Cir. 2007) (emphasis added); *see also United States v. Soloman*, 550 F. App'x 86, 90 (3d Cir. 2013) ("While the District Court recognized the difficult nature of Soloman's childhood, it reasonably concluded that his recidivist nature, his disregard for

the law and others, his lack of remorse for his actions, and his disrespect toward the Court all *warranted an enhanced sentence*.") (emphasis added); *cf. United States v. Kluball*, 843 F.3d 716, 718–19 (7th Cir. 2016) ("incapacitation (physically preventing the defendant from committing crimes on 'the outside,' by imprisoning him) is an authorized factor for a judge to consider in determining the length of a prison sentence. This is so even if the defendant's difficulties refraining from criminal conduct result from mental illness.) (internal citation and quotation marks omitted).

    **2.**    **Age and Recidivism**

Acknowledging that there is "some evidence that sex offenders pose a higher risk of recidivism than other criminal defendants," the defendant nevertheless puts forth a rather weak argument about age-based recidivism, arguing, in general, that he has a reduced likelihood of recidivism (of crimes he has denied committing, by the way) were he to be released after serving only a 30 year sentence.   Defendant's Sentencing Memorandum, p. 6.   However, there are several reasons to doubt the proposition that the rates of recidivism for child pornography offenses follow a general pattern of decreasing recidivism with age.

First, as the Sentencing Commission's statistics show, among all offenders sentenced in 2016 for child pornography offenses (which includes those convicted of production, receipt, distribution, and possession), almost half (46%) were 41 years of age or older, and *more than half* of that age group were over 50.   *See* United States Sentencing Commission, Sourcebook 2016, at Table 6.   The percentages for these age groups were slightly *higher* in each of the preceding seven fiscal years – 2015, 2014, 2013, 2012, 2011, 2010, and 2009. *See* United States Sentencing Commission, Annual Reports and Sourcebooks Archives, available at:

https://www.ussc.gov/research/sourcebook/archive/sourcebook (Table 6 for each year)

(last visited April 9, 2018).

Second, numerous studies have shown that the rate of reporting of child exploitation crimes is extremely low, indicating that any recidivism rates based on records of arrest or conviction should be viewed as underestimates.[4]  As the Sentencing Commission has noted in its report on the child pornography guidelines, "[i]t is widely accepted among researchers that sex offenses against children often go unreported and undetected," a factor that "always should be considered is assessing the results of a sex offender recidivism study based solely on reported arrests or convictions." United States Sentencing Commission, *Report to Congress: Federal Child Pornography Offenses* (Dec. 2012), at 295.   Children are particularly reluctant to talk about sexual abuse.   J. Bonta & R.K. Hanson, *Gauging the Risk for Violence: Measurement, Impact and Strategies for Change* (1994) (published by the Solicitor General of Canada, Ministry Secretariat (Ottawa).   As one study has noted:

The most serious problem with estimating overall recidivism rates . . . is that a substantial proportion of sexual offenses remain undetected. Comparisons between police statistics and victimization surveys indicate that most sexual offenses, particularly offenses against children, never come to official attention. It is also implausible to expect that the offenders themselves will provide thorough accounts of their undetected sexual crimes.   Consequently, any empirical estimates of sexual offenders' recidivism rates should be considered *underestimates*.

---

[4]    *See, e.g.*, Ryan C.W. Hall & Richard C.W. Hall, *A Profile of Pedophilia: Definition, Characteristics of Offenders, Recidivism, Treatment Outcomes, and Forensic Issues*, 82 MAYO CLINIC PROC. 457, 460-61 (2007); K. London, M. Bruck, S.J. Cedi & D.W. Shuman, *Disclosure of Child Sexual Abuse:  What Does the Research Tell Us About the Ways Children Tell?*, 11 PYSCHOLOGY, PUB. POL'Y & L. 1, 194-226 (American Psychological Assoc. 2005).

R. Karl Hanson and Monique T. Bussière, *Predictors of Sexual Offender Recidivism: a Meta-Analysis* 1996-04, available at http://www.publicsafety.gc.ca/cnt/rsrcs/pblctns/prdctrs-sxl-ffnd/index-eng.aspx. (Last visited April 9, 2018) (emphasis added).

Other studies have highlighted the danger of relying on arrest or conviction records to assess the prevalence of child sex offenses.  For example, in one recent study of child pornography offenders, the authors found that if arrests and convictions were the only indicator used, the percentage of these offenders who had prior contact offenses with children was low – approximately twelve percent. Where, however, studies used polygraph testing, or some other means to insure honest, self-reporting (such as anonymity or immunity from prosecution as part of a treatment program), the numbers were radically different.   The studies with these types of validation determined that over half such offenders admitted prior sexual contacts with children. Angela W. Eke, Michael C. Seto & Jennette Williams, *Examining the Criminal History and Future Offending of Child Pornography Offenders:   An Extended Prospective Follow-up Study*, 35 L. & Human Behavior 466, 476 (2011).   The authors of this study also observed that while recidivism rates (*i.e.* rearrest rates) were low for the child pornography offenders studied, these rates increased over time, as the period in which these offenders were followed extended from approximately 2.5 years to 5.9 years.   Thus, the rate of contact sexual offenses for these individuals increased from 4.5% during the original period to 6.0%, while the rate of noncontact sexual offenses rose from 6.5% to 11.0%.   *Id*. at 470.   The study thus indicated that the longer a child pornography offender remains in the community, the greater the likelihood that he will reoffend.

It is also important to note that under prevailing diagnostic criteria, a pedophile is an individual over the age of sixteen, who fantasizes about, is sexually aroused by, or experiences

sexual urges or behaviors towards prepubescent children ("generally age 13 or younger") for a period of at least 6 months, and who is at least five years older than the juvenile of interest. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition* (DSM-5) (2013), at 697, Diagnostic Criteria 302.2.   The record before the court indicates a likelihood that Seaway is a pedophile, given that over a period of several years he engaged in sexually explicit conduct with several minors, at least one beginning at infancy.   Importantly, research indicates that "pedophiles offend in their later years at a *greater rate* than other sexual offenders." Hall & Hall, *A Profile of Pedophilia,* 82 Mayo Clinic Proc. 457, at 458 (emphasis added).   In one study, researchers found that, of their sample of 168 sex offenders (rapists, pedophiles and sexual sadists), 44% of the pedophiles were in the older adult age range (age 40-70 years), and that when compared to other types of sex offenders, pedophiles comprised 60% of all older offenders.   *Id*.

Given the pedophilic nature of Seaway's offense conduct, the likelihood that recidivism rates for child sex offenses are underestimates, and the statistics showing the large percentage of child pornography offenders sentenced in the federal system each year are above forty years old, the Court should reject Seaway's argument that his risk of reoffending will decrease with age.

### 3.       Psychological Evaluation

As stated above, the Government has not been provided with a copy of this evaluation, and is therefore not in a position to respond to it, except to the extent that it is quoted or reference in the defendant's sentencing submission.   There, two important facts stand out:   First, the defendant has an IQ well within the normal range.   (Although the defense memo does not say so,

an IQ of 93 falls within the Average range of 90 – 109.)[5]   Second, the Government notes the stunning conclusion drawn by the defense-hired psychologist for sentencing purposes that: "at the outset of his offenses [the defendant] did not fully comprehend the nature and consequences of his behavior or that it was wrong," but that "he did *soon* become aware of the nature and consequences of his conduct and that it was wrong, *but continued to offend anyway*."   Defendant's Sentencing Memorandum, p. 8 (emphasis added).   If these are the highlights of this report, which certainly they must be as they are quoted by the defense, then clearly there is nothing there that offers any reason to deviate from the Guidelines recommendation of a life sentence.

## CONCLUSION

For all of the reasons set forth above, the Government maintains that a Guidelines sentence is the outcome warranted by Seaway's many crimes, and his complete failure to accept responsibility for his own actions. The defendant has raised no meaningful fact or reason to depart or vary from a life sentence, there is no factor or combination of factors which mitigate the gravity of his many offenses and the danger he poses to children, and there is simply no reason to impose any sentence even one day less than the recommended 360 years.

Respectfully submitted this 9th day of April, 2018,

GRANT C. JAQUITH
United States Attorney

By:  /s/   *Lisa M. Fletcher*
Lisa M. Fletcher
Assistant United States Attorney
Bar Roll No. 510187

---

[5]       *See* http://www.assessmentpsychology.com/iqclassifications.htm (last visited April 9, 2018).

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

UNITED STATES OF AMERICA

              Case Nos.:    5:16-CR-339 (NAM)

      v.                        5:16-CR-340 (NAM)

CLIF SEAWAY,

            Defendant.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**CERTIFICATE OF SERVICE**

      I hereby certify that on April 9, 2018 I filed the **Government's Sentencing Memorandum**

with the Clerk of the District Court and sent copies of said documents via ECF to the following:

      Randi J. Bianco, Esq.

              /s/

              Paula Briggs

13